MAYOR AND ALDERMEN OF WORCESTER *vs.* BOARD OF RAIL-
ROAD COMMISSIONERS.
ATTORNEY GENERAL *vs.* NORWICH AND WORCESTER RAIL-
ROAD COMPANY & others.

The St. of 1871, *c.* 343, § 11, enacts that "one or more railroad tracks" shall be constructed by four railroad corporations jointly in the city of Worcester, from a given point "extending by a curved line" to another point, and "shall pass over" certain streets "by suitable bridges; and said tracks and bridges shall be located, constructed and arranged in such manner and form as the board of railroad commissioners determines and directs." Upon a petition for a writ of *certiorari* to the board of railroad commissioners, and an information in equity against the four railroad corporations, *Held*, that the power thus given to the board of railroad commissioners includes the power to fix and establish the height and grade, as well as the mode of construction in other respects, of the tracks and bridges; that the term "suitable bridges" signifies such bridges as, in the judgment of the board, the safety and convenience of the public and the interests of the corporations require; that this court has no power to pass upon the convenience of the method of construction adopted by the board as compared with other methods; that the mayor and aldermen have no control over, and their consent is not necessary for, the board's action; that it can determine the location of the tracks before a location has been filed by the railroad corporations; that the general course ordered by it for the tracks and bridges being a curve, although a small portion, taken by itself, is straight, the course is a "curved line" within the meaning of the statute; that it can order the construction of two tracks; that it is within its power to take a strip of land thirty-eight feet wide for the location; that two of its members in the absence of the third can exercise the conferred power; and that adequate provisions of law exist to compel the making of necessary alterations in the streets crossed, and the payment of damages.

THE FIRST CASE was a petition filed by the mayor and alder-men of the city of Worcester, for a writ of *certiorari* to quash certain proceedings of the board of railroad commissioners. The petition represented that by § 11 of St. 1871, *c.* 343, entitled " An · Act to provide for a Union Passenger Station, and the re-moval of railroad tracks from certain public ways and grounds in the city of Worcester," the Norwich and Worcester Railroad Company, the Providence and Worcester Railroad Company, the Worcester and Nashua Railroad Company and the Boston, Barre and Gardner Railroad Corporation were authorized to unite in the location and construction of a railroad with one or more tracks in the city of Worcester for their joint use, commencing at a point on the line of the Worcester and Nashua Railroad at or near Bridge Street, and thence extending by a curved line across Bridge Street, Mechanic Street and Front Street, to a point on the line of the Boston and Albany Railroad east of Green Street, which streets were public ways in that city ; and that it was fur-ther provided that the railroad should pass over Bridge Street, Mechanic Street and Front Street, by suitable bridges ; that May 8, 1873, two of the three commissioners constituting the board of railroad commissioners passed an order, and afterwards, August 12, in the same year, passed a supplementary order in relation thereto, copies of which were annexed to the petition, and the substance of which is sufficiently stated in the opinion ; that these orders were erroneous and invalid, and ought to be set aside and quashed for the following causes :

" 1. That said railroad, if located and constructed in the man-ner required by said orders, would not pass over said Bridge Street and Mechanic Street by suitable bridges within the true intent and meaning of said act ; that the structures to be built across said streets under said orders, and therein denominated bridges, are not in any just sense bridges, the structure across Bridge Street being only four feet above the surface of the street, and that across Mechanic Street being only seven feet above the surface of the street ; but the said structures when built would be obstructions and nuisances, and would wholly obstruct, inter rupt and destroy said streets for all purposes of public travel.

" 2. That said commissioners have by their said orders established the grade of said railroad, and have so established said grade as to injure, obstruct and destroy said streets for all purposes of public travel, and have determined and directed that the crossings of said streets by said railroads should be made by bridges over the streets at such heights as would conform to said grade.

" 3. That said act requires that said railroad should extend from its northerly terminus by a curved line across Bridge Street, Mechanic Street and Front Street, to its southerly terminus, whereas by said orders said railroad is located over a large portion of its route and especially across said streets in a straight line.

" 4. That said commissioners have in said orders determined that between the northerly terminus of said line to the land of the Boston and Albany Railroad two railroad tracks shall be constructed, and that the distance between said tracks shall be seven feet.

" 5. That said commissioners have determined in said orders that it was necessary for said railroad companies to take a strip of land nineteen feet in width upon each side of the centre line of the location described in said orders, and have therein determined that the land included in said limits should be taken for said railroad, and have prescribed the location of said railroad, and the land to be taken by said railroad companies therefor.

" 6 That said commissioners have not by said orders or otherwise determined that the structures in said orders denominated bridges are suitable bridges over said streets.

" 7. That said railroad companies have never made or filed any location of said railroad, and said commissioners had no authority to make said orders in reference to said railroad before said railroad companies had made such location.

" 8. That said commissioners have decided in said orders that the route of said railroad was fixed and determined by said act, and that the duty of said board was by said act prescribed independently of any petition from one or all the parties interested, and independently of any act to be done by the several railroads named.

" 9. That said railroad companies had never, before said orders were passed, applied to the mayor and aldermen of said city of Worcester, to agree with them upon the route of said railroad, and said mayor and aldermen have never failed to agree with said companies upon said route, and until such failure to agree, said commissioners had no authority to fix and determine said route.

" 10. That the location, construction and arrangement of such railroad tracks and bridges in the manner prescribed by said orders is unnecessary and not required by the circumstances of the case, and is in violation of law.

" 11. That all said matters and proceedings were heard and determined, and said orders passed, by two only of the three commissioners constituting the board of railroad commissioners, without notice to the other commissioner or giving him any opportunity to be present or act in relation thereto.

" 12. That said matters were heard and determined by said commissioners without notice to the mayor and aldermen of the city of Worcester.

" 13. That said orders and all the proceedings in relation thereto before said commissioners are otherwise illegal, erroneous and invalid ; that said railroad companies claim the right and intend, in pursuance of said orders, and without other authority than is conferred by said orders, to locate and construct said railroad and said tracks and bridges across said streets in the manner prescribed by said orders, and thereby injure, obstruct and destroy said streets to the great nuisance of the public."

The board of railroad commissioners and the several railroad corporations named in the petition appeared and answered.

The cause coming on to be heard before *Endicott*, J., the parties agreed upon the following facts :

" It is agreed that the streets crossed are legal ways in the city of Worcester ; that no application was made by the railroad companies or either of them to the mayor and aldermen for a change in the grade of the streets, other than a notice to appear before the railroad commissioners on notice to lay out the railroad, and no application to agree on any location, and no application to the county commissioners was made.

" It is agreed that all proceedings of the railroad commissioners have been carried on by two of them, Mr. Briggs and Mr. Johnson ; that Mr. Adams, the third commissioner, left the country as commissioner to Vienna, April 10, 1873 ; that his commission expired July 1, 1873, and that no other person has been appointed in his place. He returned on the 29th of September, and has since been reäppointed.

" It is agreed that the commissioners acted on petitions from the several railroads ; that the Worcester and Nashua Railroad, as now constructed, commencing at Exchange Street, runs in a westerly direction, by a curve with a radius of 573 feet, a distance of 700 feet to a point near Union Street, and then runs by a reversed curve of the same radius, about 700 feet to Front Street. The grade on the first named curve averages 55 feet to the mile, and some parts of the grade are as high as 71.38 feet to the mile ; that these tracks are the tracks over which all the exchange of freight and passengers between the northern and the southern railroads are made, but not with the Boston and Albany Railroad. The railroad as suggested by the petitioners [they having submitted to the court a plan for the construction of the work which they contended was preferable to the one ordered by the board of railroad commissioners] diverges to the west from the present tracks of the Worcester and Nashua Railroad at a point 490 feet north of Bridge Street, and thence proceeds in a southerly and westerly direction, by a curve with a radius of 2280 feet, a distance of 250 feet ; thence by a curve of a radius of 5730 feet to Front Street, and thence by a curve of 573 feet radius to a point on the line of the Boston and Albany Railroad at Franklin Street. Said route leaves the land of the Worcester and Nashua Railroad at or near Bridge Street. The grade of said proposed route, commencing at Exchange Street, ascends at the rate of 69½ feet to the mile until it reaches Mechanic Street, at which point it is 15 feet above the street, and at the point where it crosses Bridge street and Manchester Street, it is 15 feet above the street ; from Mechanic Street it descends at the rate of forty feet to the mile ⊙ Front Street, and then descends at the rate of 55.44 feet to the mile to the Boston and Albany Railroad.

" The grade of the railroad, as established by the decree of the railroad commissioners commences at Exchange Street, and ascends at the rate of 52.8 feet per mile to Front Street; then is level across Front Street, and then descends at the rate of 55.44 feet to the mile to the Boston and Albany Railroad. According to this grade, the superstructure of the bridge across Mechanic Street will be only seven feet above the surface of the street; and the superstructure of the bridge across Bridge Street will be only four feet above the street. The construction of the railroad according to the decree of the railroad commissioners will destroy Mechanic Street for all purposes of public travel, unless the grade of the street is considerably lowered, and will also destroy Bridge Street in like manner, unless said street is also lowered, and the lowering of Bridge Street will make it necessary to build a bridge under the present Worcester and Nashua Railroad at its crossing of Bridge Street. The present crossing of Bridge Street by the Worcester and Nashua Railroad is at grade. The lowering of said streets will occasion considerable damage to the owners of estates abutting on said streets.

" The route proposed by the petitioners is a practicable one, and a better and more convenient route for the transaction of both freight and passenger business than the present existing route above described. Both routes contemplate the raising or discontinuing of the Boston and Albany Railroad west of Summer Street, and also the raising the grade of the Worcester and Nashua Railroad from Summer Street to the points of divergence. The route proposed by the petitioners will require the destruction of valuable buildings.; that ordered does not interfere with any valuable buildings.

" The Boston and Albany Railroad were present and made no objection to the order of the commissioners locating the viaduct.

" The route proposed by the petitioners requires the bridging of Manchester Street.

" No location of the proposed railroad has ever been filed."

The presiding judge found as a fact, that it required considerably more power to move the freight trains on the present route of the Nashua road than it would over the route ordered by the

commissioners, and by request of all parties he reserved the cause for the determination of the full court upon the pleadings, agreed facts and record.

THE SECOND CASE was an information in equity filed by the attorney general, at the relation of the city of Worcester and the mayor and aldermen of that city, against the Norwich and Worcester Railroad Company, the Providence and Worcester Railroad Company, the Worcester and Nashua Railroad Company and the Boston, Barre and Gardner Railroad Corporation, setting forth the authority given the corporations by St. 1871, *c.* 343, § 1, and alleging "that said railroad companies intend, unlawfully and without right, to build as a part of the railroad provided for in said section, and for the support of its tracks, certain structures across said streets, the structure across Bridge Street to be only four feet above the surface of the street, the structure across Mechanic Street to be only seven feet above the surface of the street, and the structure across Front Street to be only thirteen feet above the surface of the street, and have prepared plans and specifications, and have advertised for proposals for building said structures, and claim and pretend that said structures are suitable bridges over said streets, within the true intent and meaning of said act, and that they have the right to build the same as a part of said railroads; that said railroad companies have never been authorized by any tribunal having jurisdiction in the premises, to change the grade of said streets so as to accommodate the public travel through them after the completion of the structures, or to discontinue said streets, or to build said structures at such heights above the streets, and said com panies intend to build the same in manner aforesaid without obtaining any such authority; that said structures when built will not be suitable structures over said streets, within the true intent and meaning of said act, but, on the contrary, will unlawfully obstruct and interrupt said streets for all purposes of public travel along them at said structures, to the great nuisance of the public."

The information prayed "that said railroad companies may be restrained by injunction from building said structures across said

streets, and that such other relief may be granted as the nature of the case may require."

The defendants appeared and answered, and after a general replication it was agreed that the suit should be reserved for the consideration of the whole court upon the pleadings, and upon the facts agreed in the preceding case, and it was so reserved by *Endicott*, J.

*T. L. Nelson & G. F. Verry*, for the petitioners and relators.

*E. R. Hoar & G. F. Hoar*, for the defendants in both cases.

GRAY, C. J.*   These suits involve the validity of the proceedings of the board of railroad commissioners, under the St. of 1871, *c.* 343, § 11, in locating and defining the course, grade and mode of construction of a viaduct, to be made by the Worcester and Nashua Railroad Company and three other railroad corporations jointly, from a point on the line of the Worcester and Nashua Railroad, over Bridge Street, Mechanic Street and Front Street, to a point on the line of the Boston and Albany Railroad near the union passenger station in the city of Worcester, without application to or consent of the mayor and aldermen.

The subject is brought before the court by a petition of the mayor and aldermen for a writ of *certiorari* to quash the proceedings of the board of railroad commissioners; and by an information in equity in the name of the attorney general, at the relation of the city and of the mayor and aldermen thereof, to restrain the four railroad corporations from building the viaduct, for the reason that it will obstruct the public travel upon those streets.

By the St. of 1871, *c.* 343, the Legislature has determined by its sovereign authority that it is convenient and necessary for the public that there should be established in the city of Worcester a union station for the accommodation of the passenger traffic of the Boston and Albany Railroad Company and of four other railroad corporations whose roads terminate in that city, and a new viaduct for the accommodation of the freight traffic of these four corporations, and that portions of the existing locations of rail-

* This case was argued at Boston on November 17, before all the judges but AMES and DEVENS, JJ.

roads over certain public ways and grounds should be discon= tinued. In order to guard against the defeat or hindrance of the execution of its purpose, by the several railroad corporations, by the municipal authorities, or by local influences, the Legislature has itself defined the limits within which the station and the via= duct shall be located, and has delegated the duty of carrying into effect the principal features of its scheme, not to the railroad cor= porations or the ordinary local tribunals, but to boards of commis= sioners appointed by the supreme judicial and executive powers of the Commonwealth.

The position of the union passenger station has been fixed by special commissioners appointed by this court, after hearing the five railroad corporations and the mayor and aldermen, and their report has been returned and accepted, and thus, by the terms of the act, and the decision of the court, has become "binding on all said parties." St. 1871, *c.* 343, § 1. *Mayor & Aldermen of Worcester* v. *Norwich & Worcester Railroad Co.* 109 Mass. 103.

The powers, conferred by the provisions of the act upon the board of railroad commissioners appointed by the Governor and Council, embraced the determination of the plan of the station, of "its location with reference to the adjacent streets, and to the tracks of all said corporations, located or proposed to be located in the vicinity thereof," and "of the arrangement and location of said tracks" such "as in their judgment the safety and conven= ience of the public and the interests of all said corporations re= quire;" and also of the lands which the Boston and Albany Rail= road Company might take for the purpose of the union station, and for providing suitable approaches thereto, "including the location of any street or way;" as well as the establishment of the rules and regulations for the use of the station by the differ= ent railroad corporations; the fixing of the rent to be paid there= for by the other corporations to the Boston and Albany Railroad Company, and of the compensation to be paid by that corpora= tion to the others upon the discontinuance of parts of their present locations; and the determination of the portions which some of those corporations, in extending their roads to the union station, might take and use of the locations of the others, and the lands

which either might take within the city for depot or station pur-
poses. St. 1871, *c.* 343, §§ 2, 3,.4, 6, 8, 9, 10, 15. No appeal is
given from the decision of the railroad commissioners upon any
matter submitted to them, except that by § 8 any party, dis-
satisfied with their award of compensation for rights under exist-
ing contracts or leases affected by the discontinuance of existing
locations, may have the same reässessed by a jury.

As the earlier sections of the statute make the union of the five
railroad corporations in one passenger station, the location and
establishment of that station, and its erection by the Boston and
Albany Railroad Company, independent of the wishes or the
opposition of either corporation ; so the eleventh section im-
peratively requires four of them to "unite in the location and
construction of one or more railroad tracks for their joint use,
commencing at a point on the line of the Worcester and Nashua
Railroad at or near Bridge Street in said city, and extending by
a curved line across Bridge Street, Mechanic Street and Front
Street, to a point on the line of the Boston and Albany Railroad
east of Green Street ; " and submits all questions of the amount
of contribution to the expense of this viaduct, and the manner of
use of the same by each corporation, to the final determination
of the railroad commissioners.

This section further provides that " said tracks shall pass over
said Bridge Street, Mechanic Street and Front Street, by suitable
bridges ; and said tracks and bridges shall be located, constructed
and arranged in such manner and form as the board of railroad
commissioners determines and directs, after due notice and hear-
ing of said corporations and the mayor and aldermen of said
city." The Legislature, in framing this section, evidently deemed
it essential to the fulfilment of its entire scheme for the accom-
modation of both the passenger and the freight traffic of all the
corporations, that the powers of the railroad commissioners should
be as paramount in relation to the viaduct, as they had already
been made by the previous sections in regard to the station and
the tracks in its immediate neighborhood.

The Legislature itself approximately determines the position of
the two ends of the viaduct, and so far defines its course as to

declare that it shall extend by a curved line over Bridge Street, Mechanic Street and Front Street. Within these limits, the location of the tracks and bridges of the viaduct is in the most explicit terms submitted to the determination of the railroad commissioners. The propriety of the course and direction of the location of railroad tracks, even when entrusted to the judgment of the railroad corporation itself, cannot be revised by this court, except in case of exceeding the limits prescribed by the Legislature, or of bad faith. *Fall River Iron Works* v. *Old Colony & Fall River Railroad Co.* 5 Allen, 221. The enactment now in question, while it provides that " said tracks shall pass over " these three streets " by suitable bridges," declares not only that " said tracks and bridges shall be located," but that they shall be " constructed and arranged," " in such manner and form as the board of railroad commissioners determines and directs." The power thus granted clearly includes the authority to fix and establish the height and grade, as well as the mode of construction in other respects, of these tracks and bridges ; for the grade of the viaduct, in order to make it of any value for the object proposed, must have reference to the grade of the union station and of the intermediate tracks, and not be subordinate to the supposed necessities of the travel upon the three streets over which it passes or upon the other highways of the city. The " suitable bridges," here mentioned, must, in the light of the other provisions of the section and of the whole statute, be taken to mean such bridges, prescribed by the railroad commissioners, " as " (in the words applied in § 4 to the other tracks in the vicinity of the union station) " in their judgment the safety and convenience of the public and the interests of all said corporations require." We have no authority therefore to pass upon the comparative convenience of the location and grade of the viaduct, suggested by the mayor and aldermen, and of those determined by the railroad commissioners.

In this section, as elsewhere throughout the act, the mayor and aldermen of the city, so far as regards the union station, and the system of railroad tracks connected therewith, are treated, not as public officers entitled to any control, but as one of the parties

subjected to the jurisdiction of a paramount authority. In the first and fourth sections, relating to the original location of the union passenger station, they are in terms classed with the several railroad corporations as "parties in interest." In this eleventh section, they are dealt with in the same manner, as parties to whom notice is to be given and who are to be heard, not as a tribunal which is to adjudicate. Their assent is not required to the taking of land by the Boston and Albany Railroad Company under § 2, for the purposes of the union station, and of suitable approaches thereto, although "including the location of any street or way," nor to the taking of land by any of the railroad corporations under § 15, for the purposes of the act, or of depots or stations. They have no power under § 7, over the discontinuance of existing locations, but only to allow the railroad tracks to remain temporarily thereon after such discontinuance ; and by § 22, on the contrary, they are required to lay out streets, as therein prescribed, over such discontinued locations, and to maintain railroad tracks thereon for the use of the abutters.

The seventeenth section does not, in our judgment, affect this case. It in no wise restrains or qualifies the power and authority of the railroad commissioners under § 11, and has no application to the acts required to be done by the four railroad corporations jointly, in accordance with the direction of the railroad commissioners, in constructing the tracks and bridges which they are peremptorily required to construct over the three streets named in that section ; but is limited in effect, and indeed in terms, to changes which, for the purposes of the act, "said corporations respectively" are authorized, without being directed, to make in the grade and construction of their railroads ; and requires the consent of the mayor and aldermen only when the several corporations have occasion "to raise, lower, alter the course of, or otherwise change any streets or ways in said city."

The eleventh section does not require or authorize the railroad commissioners or the railroad corporations to raise or lower, alter the course of, or otherwise change, either of the three streets named therein, or any other street or way in the city. It simply provides for the building and maintaining of the viaduct according to the directions of the railroad commissioners.

The orders of the railroad commissioners, which are complained of in these suits, determine the course and grade of the tracks and bridges of the viaduct, direct that the abutments of all the bridges shall be placed upon the boundary lines of the three streets, and shall be built of the height of fifteen feet below the rails, and thirteen feet below the bottom of the superstructure, with a foundation of four feet more, which, if the grade of those streets should be lowered by the proper authority to the level of the top of the foundations, would afford ample room for the public travel over those streets to pass under the bridges.

For the reasons already stated, the court is of opinion that these orders cannot be held to be invalid, either for the reason that the bridges are not suitable, or because the consent of the mayor and aldermen has not been given to their location, arrangement or construction in the mode directed by the railroad commissioners.

The rights of all parties sustaining damage by these proceedings are fully secured by " the general laws in like cases," which the eighteenth section of the act expressly makes applicable, " except as herein otherwise provided."

The damages occasioned by laying out and maintaining the joint road of the four corporations by means of the viaduct may be assessed by the county commissioners, or, in case of dissatisfaction with their estimate, by a jury, under the Gen. Sts. *c.* 63, §§ 21 *& seq.   Parker* v. *Boston & Maine Railroad,* 3 Cush. 107. It being admitted that this road, where it crosses the streets in question, will cause obstructions thereto, the railroad corporations cannot proceed to construct the viaduct until the county commissioners, upon the application of the railroad corporations or of the mayor and aldermen, shall have made a decree prescribing what alterations shall be made in those streets, and what structures at the crossing, (conformable, of course, to the viaduct as ordered by the railroad commissioners,) and requiring of the railroad corporations satisfactory security for compliance with the lawful requirements of the county commissioners, and for the indemnity of the city, under the Gen. Sts. *c.* 63, §§ 48, 49.   For the damages caused to the estates of third parties by such alterations, the

railroad corporations would be liable. *Gardiner* v. *Boston &. Worcester Railroad*, 9 Cush. 1. If they do not comply with such requirements, they may be compelled to do so by this court sitting in equity, or may perhaps be liable to indictment. Gen. Sts. *c.* 63, § 50. *Roxbury* v. *Boston & Providence Railroad*, 6 Cush. 424, and 2 Gray, 460. *Commonwealth* v. *Vermont & Massachusetts Railroad*, 4 Gray, 22.

Several minor objections to the orders of the railroad commissioners remain to be noticed. (1.) The route of the tracks in question is fixed and determined by the St. of 1871, *c.* 343; and the provisions of the Sts. of 1872, *c.* 53, §§ 6–8, and *c.* 180, § 3, have therefore no application to the case. (2.) The corporations could not file a location of these tracks until it had been determined by the railroad commissioners. (3.) The general course of the line prescribed by the railroad commissioners being a curve, it was " a curved line," within the meaning of the St. of 1871, *c.* 343, § 11, although a short piece of it, taken by itself, was straight. (4.) That section providing for " one or more railroad tracks," the objection that the orders require the construction of two tracks is untenable. (5.) It was within the authority of the railroad commissioners, to require to be taken, for the construction of the tracks and bridges, and the convenient transaction of the business of the four railroad corporations interested, a strip of land thirty-eight feet wide, being less than half the width of the land authorized to be taken for the ordinary location of a railroad under the Gen. Sts. *c.* 63, § 17. (6.) The St. of 1869, *c.* 408, establishing the board of railroad commissioners, containing no provision (such as is made by the Gen. Sts. *c.* 17, § 13, in the case of county commissioners) requiring the presence of three commissioners, the case falls within the general rule that a joint authority given to three or more public officers may be executed by a majority of them. Gen. Sts. *c.* 3, § 7, *cl.* 3. *Reynolds* v. *New Salem*, 6 Met. 340, 343.

The result is, that the orders of the board of railroad commissioners, determining the location, arrangement and construction of the bridges and tracks in question, are valid, and the

*Writ of certiorari is refused,*

and that, as other adequate remedies are provided by law to compel the making of the necessary alterations of the streets over which these tracks pass, and the payment of damages occasioned thereby, therefore, upon the information of the attorney general, there must be                    *Judgment for the defendants.*