SOLON A. REED *vs.* INHABITANTS OF LANCASTER.

Worcester.    September 30, 1890. — November 26, 1890.

Present: FIELD, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Town — Overseers of the Poor — Executory Contract — Ratification.*

The overseers of the poor of a town, whose board is annually reconstituted, under the Pub. Sts. c. 27, § 69, by the retirement of one member and the election of another, have no authority, while acting as almshouse directors, to bind the town respecting the management of the almshouse for the next municipal year.

An invalid executory agreement for the rendering of personal services to a town, entered into by its board of overseers of the poor, cannot, after the reconstitution of the board by the retirement and election of a member, be ratified by its members acting individually and not as a board; and the continuance of the services thereafter, and knowledge on the part of the new member that there was some sort of an agreement for such services of the terms of which he had been only partially informed, are insufficient to show such ratification by the board.

CONTRACT to recover for personal services, as superintendent of an almshouse, from April 1, 1888, to November 1, 1888, under the following agreement:

" This agreement, made this first day of February, 1888, between Solon A. Reed and the overseers of the poor of Lancaster, Mass. Witnesseth: That said Reed and his wife agree to continue as superintendent and matron of the pauper establishment in said Lancaster from the first day of April, 1888, to the first day of April, 1889, and in a faithful and workmanlike manner perform all the duties pertaining to said office, giving their whole time in care of the family and the property connected with said establishment, and management of the farm. If from any cause they or either of them are prevented from performing the duties of said office, he agrees to supply their place at his own expense, or to make such arrangement concerning the same as shall be satisfactory to the overseers. The overseers agree that the superintendent may have help necessary to the management of the farm to the extent of one man for six months, and more if in their opinion it is needed, and the same be paid by the town; they also agree that the matron may have one girl for the year, and such other assistance in the house as a majority of the overseers may deem expedient, the same to be paid by the town; and the overseers also agree to pay the said Reed and his wife for their services one year five hundred dollars, and they agree that said Reeds are to have their daughter with them at such times as they desire without any charge by the town. The overseers and said Reed agree to decide on or before June 1, 1889, whether any bargain shall be made between them to take effect after April 1, 1889.

" Henry H. Stowe, for the Overseers of the Poor."

Trial in the Superior Court, before *Dewey*, J., who allowed a bill of exceptions, in substance as follows. It was admitted that at the date of the above agreement the defendant town had duly adopted the provisions of the statute (Pub. Sts. c. 27, § 69) authorizing the election of overseers of the poor for terms of three years, one member of the board being elected each year to take the place of a member then retiring; that Henry H. Stowe, Calvin Holman, and another had been duly elected overseers of the poor, each for the term of three years; that on February 1,

1888, Stowe and Holman constituted the board, the other member having previously resigned; that the annual meeting of the defendant town for the choice of its officers was held on the third Monday of March; that on the third Monday of March, 1888, one Kilbourn was chosen a member of the board for the term of three years, to take the place of the member who had resigned and whose term would then have expired; and that the board consisted thereafter of Stowe, Holman, and Kilbourn. There was evidence that the above agreement was drawn, executed, and delivered to the plaintiff by Stowe, with the knowledge and assent of Holman, but without being formally submitted to the board; and there was no evidence that the board had formally adopted the agreement as drawn and executed by Stowe. The plaintiff offered the agreement in evidence, and the judge, against the defendant's objection, admitted it; and the defendant excepted.

No evidence was subsequently offered by the plaintiff tending to show ratification of the contract or instrument by the defendant town. The third member of the board of overseers for the year 1888–89, Kilbourn, testified that he had never seen the contract or instrument in question, but he understood there was some sort of an agreement or contract of the town with the plaintiff, and had been informed somewhat as to its terms. After the close of the evidence, the defendant asked the judge to rule that there was no evidence upon which the plaintiff would be entitled to recover against the defendant town upon the written contract relied upon by the plaintiff. The judge refused to give the instruction, and the defendant excepted.

The judge, among other things, instructed the jury, that, so far as the terms and form of the agreement were concerned, it was to be taken as an agreement binding on the town; that they would be authorized to find that it was a contract made by the board of overseers of the poor, and a valid contract, and enforceable against the defendant town; and that it was competent for the board of overseers in office from the third Monday of March, 1888, to the third Monday of March, 1889, to adopt and make valid, as against the defendant town, the contract previously assumed to have been made, even if such contract was infirm; and submitted to the jury the question whether the board of

overseers of the poor for the years 1888–89 ratified the above agreement made in February, 1888.

The jury answered this question in the affirmative, and found for the plaintiff; and the defendant alleged exceptions.

*J. W. Corcoran & H. Parker*, for the defendant.

*J. Hopkins*, for the plaintiff.

DEVENS, J. No directors of the almshouse having been chosen, the overseers of the poor, by whom the contract was made upon which it is sought to charge the defendant town, were entitled to act as such. Pub. Sts. c. 33, §§ 1, 3. But even if we assume that the contract, so far as its form merely was concerned, was one by which the town might have been bound, it was not of such a character that the town could be made responsible thereon. The contract which they undertook to make in February, 1888, was for the services of the plaintiff and his wife from April, 1888, to April, 1889. There were then but two overseers of the poor, one of the original members having resigned. The vacancy would be filled at the next annual town meeting thereafter, which would occur on the third Monday of March, 1888. The town had adopted the statute which authorizes the election of the members of the board of overseers for three years, one member being elected each year to take the place of the member then retiring. In March, Kilbourn was chosen to take the place of the member who had resigned previously, and whose term would have expired at that time. Pub. Sts. c. 27, § 69. By the Pub. Sts. c. 27, § 71, it is directed that boards of overseers shall annually within seven days after the annual town meeting choose a chairman and a secretary, the latter of whom need not be a member of the board. It would seem that this direction had not been complied with; at least, Stowe, who assumed to act for the overseers, does not describe himself as chairman. The duties which overseers of the poor are to perform, are those connected with the immediate care and relief of the poor; and when the duties of directors of the almshouse are imposed upon them, they continue of this character. They are not authorized to make executory contracts which are not to be performed, or even entered upon, until after other members are added to their board who are entitled to be consulted upon and to act in the matter, except such as are re-

quired in order that the care and supervision of the institution may be continued until the new board is prepared to act, or such as are necessary to furnish a proper equipment for the institution for a reasonable time. The annual change in the constitution of the board implies that as reconstituted it will not be hampered or embarrassed, much less controlled, by the action of its predecessors.

Again, the contract which the overseers undertook to make was one for the management of the almshouse during the following year. It would have been entirely competent for the town at its next annual meeting, and before this contract became operative, to choose a board of directors of the almshouse distinct from the overseers of the poor, who only perform their duties when no such board is chosen. It certainly could not be intended that such a board should be obliged to carry out the executory contracts of the overseers, and that the town in withdrawing the duty of managing the almshouse from the overseers should find itself trammelled with their obligations, and subjected to the responsibilities which they had undertaken as to the future management of it.

At the close of the evidence that Holman, by whom the contract was not actually signed, assented to the agreement with the plaintiff, the signature of Stowe, the other member, being "for the overseers," the instrument relied on as a contract was offered in evidence, against the defendant's objection. "No evidence was subsequently offered," the bill of exceptions finds, "by the plaintiff, tending to show ratification of the contract or instrument by the defendant town." Kilbourn, the third member of the board of overseers for the year 1888–89, testified that he had never seen the contract or instrument in question, but he understood there was some sort of agreement or contract of the town with the plaintiff, and had been informed somewhat as to its terms. The defendant asked the court to rule that there was no evidence upon which the plaintiff would be entitled to recover against the defendant town upon the written contract relied upon by the plaintiff. This the court declined to do, and afterwards submitted to the jury the question whether the board of overseers for 1888–89 ratified the contract made in February, 1888, ruling that they could adopt and make valid as against the de-

fendant town the contract previously assumed to have been made, even if when made this was invalid. The evidence of Kilbourn, which is the only evidence on this subject, fails to establish any ratification by him, or by the board after he became a member of it, and the defendant was entitled to the ruling requested. If a ratification can be made of a written contract, either orally or by acts *in pais*, so that the person is bound as if he had signed the written contract, and may be treated as if he had done so, which we do not decide, there can be no such ratification except with a full knowledge of what is ratified. It is not enough, from the fact that a person acting in a public capacity knows that there is " some sort of a contract," and " something of its terms," to infer that he has so assented to it that he makes those on whose behalf he is entitled to act responsible thereon. This evidence cannot supply his signature to the contract, or make that of the one who has assumed to sign for the overseers his signature.

Nor does the case afford any evidence of the action of the board of overseers after the action of Kilbourn tending to show ratification. If ratified, it must have been so by them as a body and not individually. While they may act by a majority, the members are still to act together, and not by the agreement of members separately obtained. Pub. Sts. c. 3, § 3, cl. 5. *Mayor & Aldermen of Worcester* v. *Railroad Commissioners*, 113 Mass. 161. *Shea* v. *Milford*, 145 Mass. 525. The fact that the plaintiff continued to render service at the almshouse ˙after the new board was organized, and until November 1, 1888, would not tend to show that the new board had ratified an invalid executory contract, so that he would be entitled to claim damages against the town for a breach thereof.

*Exceptions sustained.*