RAILROADS—CERTIFICATE.
    The board of railroad commissioners properly exercises its discretion
    by denying a railroad company the certificate provided for by General
    Railroad Law, § 59 (the object of the section being to restrict the building
    of unnecessary roads, to protect existing railroads, and also citizens from
    making alluring, but profitless, investments), where but $11,000 of $300,-
    000 of stock is subscribed for; much of its 25 miles of length will parallel
    two roads, one of which has daily 13 passenger trains and the other 6;
    it will cross both roads at grade; and the total number of passengers per
    year over the other roads between the termini of the proposed road is
    only about 30,000; though some of the few inhabitants between the
    termini would be accommodated by the road, and a business, in the way
    of excursions to a summer resort at one of the termini, might be built up.

Application of the Auburn & Western Railway Company to the
court for the certificate provided for by section 59 of the general
railroad law, upon a certified copy of all maps and papers on file in
the office of the board of railroad commissioners of the state of New
York in the matter of the application of said railway company for
such certificate; said board having, by an order made at the capitol,
in the city of Albany, on the 8th day of June, 1897, denied the ap-
plication of said railway company for such certificate.   Denied.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD,
and McLENNAN, JJ.

William Nottingham, for applicant.
Albert H. Harris, for contestant New York Cent. & H. R. R. Co.

PER CURIAM.   The denial by the board of railroad commission-
ers of the petitioner's application was the exercise of a power, large-
ly discretionary in its character, which the legislature of this state
had vested in a body created for a special purpose, and composed of
men peculiarly qualified by experience to deal with the vexatious
problems arising out of the ever-increasing demand for better and
more adequate means of transportation.   And, while this court has
been expressly empowered to review the action of the commissioners
in refusing to grant such a certificate as was asked for in this case,
yet it has held, in every instance where a review has been had, that,
for the reason above stated, their determination must be treated in
the same manner as that of any other subordinate judicial tribunal
whose judgments are subject to review; which is equivalent to say-
ing that their conclusion must be respected and sustained, unless it
be made clearly and affirmatively to appear that it was founded
upon erroneous legal principles, or that in reaching the same the
commissioners proceeded contrary to the clear weight of evidence,
or that they abused the discretion vested in them, and arbitrarily
refused to issue the certificate asked for.   In re New Hamburg &
P. R. Co., 76 Hun, 76, 27 N. Y. Supp. 664; In re Amsterdam, J. & G.
R. Co., 86 Hun, 578, 33 N. Y. Supp. 1009; In re Depew & S. W. R.
Co., 92 Hun, 406, 36 N. Y. Supp. 991.   In the light of the rule just
adverted to, we have carefully examined the record in this pro-

ceeding, with a view to determining to what extent the petitioner has sustained the burden resting upon it of showing affirmatively that the determination of the commissioners is in any respect erroneous.

From this record it appears that the petitioning corporation was organized in July, 1896, under the name of the Auburn & Western Railway Company, for the purpose of constructing and operating, by electricity, a street surface railroad, which should extend from the west line of the city of Auburn, in the county of Cayuga, to the east line of the town of Seneca Falls, in the county of Seneca. It further appears that it was designed by the incorporators that, when thus constructed, the road should connect with the Auburn City Railroad Company at its eastern terminus, and at its western terminus with another surface railroad running from Cayuga Lake to the city of Geneva, in Ontario county; thus forming a continuous line of road, operated by the trolley system, from Auburn to Geneva, a distance of about 25 miles. The capital stock of the petitioner's company is $300,000, of which sum $11,000 only had been subscribed when this proceeding was commenced; and, of this amount, Mr. Clifford D. Beebe, of Syracuse, appears to be the owner of 96 shares, the par value of which is $9,600. It is also made to appear that, if the petitioner's road is constructed upon the route contemplated, it will, in connection with the Geneva road, parallel that portion of the New York Central & Hudson River Railroad known as the "Auburn Branch" for the entire distance between Auburn and Geneva; that it will also parallel a branch of the Lehigh Valley Railroad from Auburn to a point on Cayuga Lake midway between the villages of Cayuga and Union Springs; and that it will necessarily cross each of these roads at grade, between Auburn and Cayuga. Notwithstanding the facilities for transportation which these two lines of railroad afford,—and it appears that there are 13 passenger trains passing over the New York Central & Hudson River Railroad and 6 over the Lehigh Valley Railroad daily,—it is insisted that they are wholly inadequate, and that consequently public convenience and a necessity require the completion of the competing line which the petitioner proposes to construct. To support this contention, witnesses were called from the city of Auburn, and from the various localities and villages intersected by the proposed road and its connections, all of whom testified unhesitatingly that, in their opinion, it would prove a great convenience to the public if better railroad facilities were furnished. This, doubtless, was not only the expression of an honest opinion, but it was one which, to a certain extent, was founded in fact. To illustrate: One gentleman residing in Auburn said that, if the road were in operation, it would enable him to reach his cottage, upon the shore of Cayuga Lake, in the afternoon and return in the morning before business hours, which he could not do under existing circumstances. Another, residing at Aurelius, a small hamlet about five miles west of Auburn, said he would be glad to avail himself of the proposed road as a means of sending his children to school at Auburn; while another, residing at Cayuga, thought it would afford him a better opportunity of transacting

business at Auburn than was the case at present.   To each of these witnesses, as well as to many other similarly situated, it would undoubtedly prove more convenient if they could be furnished with additional facilities for transportation.   But what would prove convenient to them personally might fall far short of amounting to a public necessity; and, over and against the reasons they give for the opinions which they expressed, stand out certain pregnant facts concerning which there is haply no controversy whatever.   To one or two of these brief allusion will be made.

The city of Auburn contains a population of about 30,000 souls, and the entire population of the territory adjoining the route of this proposed road, from Auburn to its western terminus, including the hamlet of Aurelius and the village of Cayuga, does not exceed 2,000. It appears that during the year 1896 the total number of passengers carried between Auburn and Cayuga on the New York Central & Hudson River Railroad was 26,460, and between Auburn and Aurelius by the same road 3,644, or a total of about 30,000 persons. Certainly, this limited amount of patronage does not lend encouragement to persons who are asked to invest their means in the new enterprise, especially when it is distributed between two or more competing lines.   But it is said that there is a pleasure resort at the western terminus of the proposed road which draws many people to it during the summer season, and that, if the road were available for that purpose, many large excursion parties might be induced to visit that spot.   Summer resorts, however, are, at the best, too ephemeral to furnish a satisfactory basis for declaring a railroad which will accommodate its patrons, by reason of that fact, a public necessity, and the patronage from this source would necessarily be limited to a small portion of the year.   Again, we are told that increased facilities for transportation invariably result in increased business, and that the history of nearly every electric road demonstrates that the mere fact of its existence has a tendency to draw to it patronage.   This suggestion is not altogether without merit, and it is perhaps not unreasonable to assume that, if the projected road were completed along the proposed route and were well equipped and properly managed, very many more people would use it as a means of conveyance than now use the steam railroads running along virtually the same route.   But, with this much conceded, the fact still remains that, under the most favorable circumstances which can possibly be imagined, the population of the district to be traversed by the petitioner's road is insufficient to sustain these different lines, and the probability is that, if the local patronage thereof were to be distributed between the three, it would be found that no profit resulted therefrom to either.   It was said by the learned justice who wrote the opinion in the case of In re Amsterdam, J. & G. R. Co., supra, that it was the evident purpose of the legislature, in adopting the section under which this proceeding was brought, "to restrict the building of roads not actually needed, in order to protect, not only existing railroads, but also citizens from investing in alluring, but profitless, enterprises."   And one has but to examine, in the most cursory manner, the reported cases

in this state, to discover that not a few of them arise out of disappointed expectations, which furnish the principal foundation for enterprises of this character, and which, when first undertaken, were equally as alluring and full of promise to the investors as the one we are now considering.

It is the undoubted policy of the law to foster and encourage every legitimate enterprise which is at all likely to prove advantageous to the general public; but, at the same time, it is the obvious duty of those upon whom the responsibility rests to exercise a wise discretion in these matters, to the end that one enterprise, however alluring it may seem, shall not be aided and encouraged at the expense of another, which is perhaps equally deserving. In the present instance this discretionary power has been exercised by the railroad commissioners in a manner to commend itself to our approval, and for that reason we feel constrained to refuse the certificate asked for from this court. Application denied, with costs.

FOLLETT and WARD, JJ., not voting.