PEOPLE ex rel. TERMINAL RAILWAY OF BUFFALO et al. v. BOARD OF RAILROAD COM'RS OF STATE OF NEW YORK et al.

(Supreme Court, Appellate Division, Third Department. June 28, 1900.)

1. RAILROADS—AUTHORITY TO CONSTRUCT—COMMISSIONERS' DECISION—REVIEW.
   Courts will not reverse the determination of the commissioners of railroads as to whether or not public convenience and necessity require the construction of a certain railroad, except where it clearly appears that their decision was founded on erroneous legal principles, or was contrary to the weight of evidence.

2. SAME—CERTIFICATE—EVIDENCE—OPINION AFFIDAVITS.
   Affidavits giving expression to the opinions of affiants as to whether or not the construction of a certain railroad would be conducive to public convenience, and whether its construction is required by public necessity,

are not competent evidence on which the board of railroad commissioners would be authorized to issue a certificate that "public convenience and necessity require its construction."

**3.** SAME—PUBLIC CONVENIENCE AND NECESSITY.

That the construction of a railroad will afford a trunk line connections between its terminal facilities in a city and its main line, obviating the necessity of having a large number of cars and trains passing over an existing line running through the center of the city, and causing a large number of grade crossings, and also saving a delay of four hours in transportation, due to the inadequate facilities of the existing terminal company, is sufficient to warrant the issuance of a certificate that public convenience and necessity require the construction of the new line.

**4.** SAME—TERMINALS—EXISTING FACILITIES.

That an existing line over which a railroad company handles its terminal business in a city, by making proper improvements, could handle the business of the company so expeditiously as to obviate the objection that its facilities are inadequate, is not a ground for denying the company's application to the railroad commissioners for a certificate that public convenience and necessity require the construction of a new road, where it does not appear that the applicant has power to make the improvements to the existing line.

**5.** SAME—CONNECTIONS.

That an existing terminal railroad company is willing to furnish a trunk line with adequate facilities for handling its terminal business in a city, at a rate to be fixed by arbitration, is not an adequate ground to authorize a court to set aside a certificate of the railroad commissioners that public convenience and necessity require the construction of a new road projected by the trunk line, to connect its city terminal facilities with its main line, where it appears that the existing line does not extend to within three miles of the petitioner's terminals.

**6.** SAME.

That the proposed railroad would parallel an existing terminal railroad for a part of its route is not ground for reversing the action of the railroad commissioners in issuing a certificate authorizing the construction of the proposed road.

Certiorari by the people, on the relation of the Terminal Railway of Buffalo and another, to review the action of the board of railroad commissioners of the state of New York in granting a certificate to the Lehigh & Lake Erie Railroad Company for the construction of a new road. Decision of board affirmed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

Ira A. Place, for relators.

Wilson S. Bissell and Frank H. Platt, for respondents.

EDWARDS, J. The certificate of incorporation of the Lehigh & Lake Erie Railroad Company was filed May 7, 1896. The purpose of its incorporation, as expressed in its articles of association, was to construct, maintain, and operate a railroad "from a point on the main line of the Lehigh Valley Railway about one-half mile west of its crossing of Union road, in the town of Cheektowaga, Erie county, and state of New York; thence southerly, westerly, and northerly, through the towns of Cheektowaga and West Seneca, to a point in the city of Buffalo, in said county of Erie and state of New York, known as 'Tifft Farm.' " The proposed road is about 10 miles in length, and lies within Erie county. Having complied with the essential preliminary

requirements of the statute, the railroad company applied in 1896 to the board of railroad commissioners for a certificate, under section 59 of the railroad law, "that public convenience and a necessity require the construction of said railroad as proposed in said articles of association." The application was denied on August 26, 1896. On June 21, 1899, the company renewed its application for a certificate in accordance with the statute, which provides that "the application may be renewed after one year from the date of such refusal." On January 3, 1900, the board of railroad commissioners granted the application and issued its certificate. The relators have instituted this proceeding to review and reverse the determination of the commissioners.

The Terminal Railway of Buffalo, one of the relators, is owned jointly by the New York Central & Hudson River Railroad, the other relator, and by the Lake Shore & Michigan Southern Railway Company. It is about 10 miles in length, extends from the village of Depew to the village of Blaisdell, in Erie county, and was constructed for the purpose of connecting five railroads passing through Blaisdell with four passing through Depew. The Lehigh & Lake Erie Railroad is projected in the interest of, and is to be owned and operated by, the Lehigh Valley Railroad Company. The latter company owns very large and important terminal properties on the shore of Lake Erie, in the city of Buffalo, known as "Tifft Farm," consisting of over 400 acres. It has no connection of its own between its main line, near Buffalo, and these terminal facilities, but its freight is carried over the tracks of the Buffalo Creek Railroad, which runs through a thickly-populated part of the city of Buffalo. The object to be attained in the construction of the proposed road is to furnish a connection between the Lehigh Valley Railroad and its Tifft Farm terminal on Lake Erie, and the lines of the proposed road will be outside of the corporate limits of Buffalo, except for a short distance, where it enters the city, near the shore of Lake Erie.

In reviewing the proceedings of railroad commissioners, courts recognize the fact that much importance should be attached to the opinions of the commissioners. "The commissioners should be credited with some technical knowledge which this court is not presumed to possess." In re New Hamburgh & P. C. R. Co., 76 Hun, 76, 27 N. Y. Supp. 664. In Re Auburn & W. R. Co., 37 App. Div. 162, 55 N. Y. Supp. 895, where the board had denied the application for a certificate, the court said:

"The denial by the board of railroad commissioners of the petitioner's application was the exercise of a power largely discretionary in its character, which the legislature of this state had vested in a body created for a special purpose, and composed of men peculiarly qualified by experience to deal with the vexatious problems arising out of the ever-increasing demand for better and more adequate means of transportation."

The rule is now well settled that this court should not reverse the determination of the commissioners unless it is clearly made to appear that their decision was founded upon erroneous legal principles, or was contrary to the clear weight of evidence. In re Amsterdam, J. & G. R. Co., 86 Hun, 578, 33 N. Y. Supp. 1009; In re Auburn & W.

R. Co., 37 App. Div. 162, 55 N. Y. Supp. 895. The question here presented is whether the decision of the commissioners that public convenience and necessity require the construction of the proposed road is contrary to the clear weight of evidence. An examination of the record convinces me that their determination is abundantly supported by the evidence. Although there was some oral testimony given before the commissioners upon the hearing, the most of the evidence presented by the applicant to the board was contained in affidavits, of which there were a large number, made by various officers of the Lehigh Valley Railroad Company, by the members of the grade-crossing commission of the city of Buffalo, by the proprietors of the various newspapers of Buffalo, and by a number of prominent business men of that city. None were offered in opposition. While the commissioners are not bound by technical rules of evidence, and may receive affidavits which, in their opinion, tend to throw light upon the question upon which they are to pass (People v. Board of Railroad Com'rs, 160 N. Y. 208, 54 N. E. 679), it is true, as contended by counsel for the relators, that affidavits which simply express the opinions of the affiants, without any facts, are not evidence (In re Amsterdam, J. & G. R. Co., 86 Hun, 583, 55 N. Y. Supp. 895); and these affidavits are, to some extent, obnoxious to that criticism. But, eliminating from these affidavits the mere opinions of the affiants, sufficient remains, together with the oral testimony, to support the conclusion of the commissioners that the proposed road is a public convenience and a necessity. The statistics show that the interchange of traffic between the Tifft Farm and the Lehigh Valley Railroad has increased from 191,746 cars in 1895 to 333,495 in 1898, and the volume of business is still increasing. This now is carried over the Buffalo Creek Railroad, which is also used by other roads entering Buffalo. Its tracks are entirely within the city, and its facilities for the transportation of freight are so inadequate that it is attended with much inconvenience, and an average delay of four hours. The removal of this large traffic of the Lehigh Valley Railroad from the streets of Buffalo, thereby diminishing the dangers and delays incident to its crossing a number of the city streets at grade, will alone furnish, I think, a sufficient basis for the conclusion as to public convenience and necessity. I think it may also be said that the reduction in the cost of the transportation of freight by the proposed route, and the saving of at least four hours' time is a public convenience.

It is urged by the relators that, with proper improvements made to the Buffalo Creek Railroad, it could handle the business of the Lehigh Valley, and the present delays and inconveniences could be avoided. I think a sufficient answer to this proposition is that it does not appear that the Lehigh Valley has the power to make the needed improvements to the Buffalo Creek Railroad if they were desired.

It is further urged by the relators that the Terminal Railway Company is willing to furnish adequate facilities, at reasonable rates, to be agreed upon or fixed by arbitration, for the transportation over its line of the freight of the Lehigh Valley Railroad. This would not meet the needs of the Lehigh Valley, for the reason that the Terminal line stops at Blaisdell, about three miles distant from the Tifft Farm

terminal of the Lehigh Valley; and, furthermore, I think it apparent that, in the handling of its large amount of freight, the Lehigh Valley should be free from any embarrassment that might arise if subjected to the control of the relators. There does not seem to be any good reason why the Lehigh Valley should not be permitted to fill the gap between its main line and its Tifft Farm terminal, and handle its own freight free from the control of other roads. The fact that the proposed road would parallel the Terminal Railway for the distance of four miles is not, I think, worthy of serious consideration, in view of the different purposes for which the roads are to be operated.

The facts of this case are easily distinguishable from the Goshen case (People v. Board of Railroad Com'rs, 40 App. Div. 559, 58 N. Y. Supp. 94), and do not bring it within the condemnation which was there pronounced. The determination of the board should be confirmed.

Determination of board of railroad commissioners confirmed, with $50 costs and disbursements. All concur.