(Supreme Court, Appellate Division, Third Department. September 4, 1901.)

RAILROADS—ABOLITION OF GRADE CROSSING—PRESENTATION OF EVIDENCE ON HEARING.

　　Where, on the hearing before the railroad commissioners of an application by a railroad company to abolish a grade crossing within a certain town, the town's attorney was present, and consented to a shortening of the proceedings by the commissioners viewing the crossing, on their promise to permit him to be present when they drew their findings, and no other evidence was offered by the town, an objection that the town was not permitted to introduce evidence showing that the crossing was not dangerous was untenable.

Application by the Boston & Albany Railroad Company to the railroad commissioners for the abolishment of the grade crossing at Chatham street, in Niverville, in the town of Kinderhook. From the decision of the commissioners granting the application, the town appeals. Affirmed.

Argued before PARKER, P. J., and SMITH, KELLOGG, EDWARDS, and CHASE, JJ.

E. R. Harder, for appellant.
A. B. Gardinier, for respondent.

CHASE, J. The Boston & Albany Railroad Company owns and operates a steam railroad, the main line of which in the state of New York passes through the town of Kinderhook, Columbia county. At or near the Niverville station it is crossed at grade by a highway known as "Chatham Street," and the crossing is made at an acute angle. At this crossing there are five tracks, four of which belong to the Boston & Albany Railroad Company. The most westerly track is that of the Kinderhook & Hudson Railroad Company. Immediately adjoining that track are the two main tracks of the Boston & Albany Railroad Company, and immediately adjoining the main tracks are two side tracks of said company. Chatham street is the main street in the village of Niverville, and the traffic over said crossing is many times larger than that of any other crossing in the town of Kinderhook. There are as many trains crossing that street and as many teams crossing the tracks at that point as at any crossing on the main line of the Boston & Albany Railroad in the state of New York. There are more or less obstructions to the view up and down

said tracks as they are approached from either side. In 1899 the persons constituting the town board of the town of Kinderhook and representatives of the Boston & Albany Railroad Company, consulted in regard to joining in an application to the board of railroad commissioners for the abolition of that grade crossing, and having the highway changed so as to pass under the tracks at more nearly a right angle with them. Subsequently they were unable to agree as to the maximum expense of the same, and on the 12th day of December, 1899, the Boston & Albany Railroad Company filed with the railroad commissioners a petition alleging that public safety requires alterations in the manner of said crossing, in its approaches and the method of crossing, and in the location of the highway and crossing so that said crossing shall be closed and discontinued, and the travel thereon shall be diverted to another highway or crossing not at grade, to be constructed so that said Chatham street shall pass under the main line of said railroad at a bridge about 100 feet southeasterly from said existing crossing. The supervisor of the town of Kinderhook filed an answer to said petition, substantially denying the same. Hearings were thereafter had by said commissioners, and the crossing and surroundings were inspected by them in the presence of counsel for the railroad company and of the town of Kinderhook, and on the 13th day of June, 1900, said commissioners made an order that the said crossing at grade be closed and discontinued, and the travel thereon diverted to another crossing not at grade, to be constructed so that said Chatham street shall pass under said railroad at a bridge about 100 feet southeasterly of said existing crossing. The detail of said changes is fully provided for by said order. From said order the town of Kinderhook has appealed to this court.

The appellant now contends that it was not allowed to present its evidence showing that the crossing was not dangerous, and that public safety did not require a change. There is nothing in the record before us to justify such contention. The town was represented before the commissioners by its counsel, Mr. Harder. After a map showing the surroundings and the proposed changes in the highway and crossing in detail had been offered in evidence, and some testimony had been taken on the part of the petitioner, the record shows that the following conversation was held:

"Commissioner Cole: Couldn't this proceeding be shortened if the board would go out and view the crossing? Mr. Harder: All right; and let my friend and I meet with you; and fix up your findings. Commissioner Cole: Yes. Mr. Harder: Then make your findings, so we can have all these questions passed upon by some court."

But little testimony was taken at the hearing after this conversation, and subsequently the crossing was inspected by the commissioners. A further hearing was had at the office of the commissioners, and the record recites: "Following our inspection of the crossing, we did not deem it necessary for the town of Kinderhook to submit any proof, and none was taken." It might fairly be inferred from the statement of the counsel for the town in response to Commissioner Cole that it did not care to offer oral testimony following the

inspection by the commissioners. It nowhere appears that any further evidence was offered in behalf of the town of Kinderhook, or that it had any further witnesses that it desired should be sworn in its behalf; neither was there any request by the town for a further hearing before the commissioners. The order made by the commissioners recites the appearance of the parties at the several hearings, and further recites that they were fully heard. The desirability of abolishing grade crossings wherever practicable is generally recognized, and requires no argument. The opinion of the railroad commissioners, who are appointed with special reference to their knowledge of matters connected with railroads and their operation, is entitled to weight and consideration. The rule is now well settled that this court should not reverse the determination of the commissioners, unless it is clearly made to appear that their decision was founded upon erroneous legal principles, or was contrary to the clear weight of evidence. People v. Board of Railroad Com'rs, 53 App. Div. 61, 65 N. Y. Supp. 597; People v. Board of Railroad Com'rs, 160 N. Y. 202, 54 N. E. 697; In re Amsterdam, J. & G. R. Co., 86 Hun, 578, 33 N. Y. Supp. 1009; In re Auburn & W. R. Co., 37 App. Div. 162, 55 N. Y. Supp. 895; Town Board of Schaghticoke v. Fitchburg R. Co., 53 App. Div. 16, 65 N. Y. Supp. 498; In re North Third Ave., 32 App. Div. 394, 53 N. Y. Supp. 46. There is no error in the admission of evidence that would justify a reversal of the findings of the commissioners, and we cannot say that they are based upon any erroneous legal principle, or that they are against the weight of evidence. Whatever is necessary for the protection of the lives and property of citizens is embodied in the police power of the state. That the legislature, either directly or through the board of railroad commissioners, can exercise authority over railroad crossings in securing public safety without violating the federal or state constitutions, has been frequently held. New York & N. E. R. Co. v. Town of Bristol, 151 U. S. 556, 14 Sup. Ct. 437, 38 L. Ed. 269; In re City of Northampton, 158 Mass. 299, 33 N. E. 568; People v. New York Cent. & H. R. R. Co., 156 N. Y. 570, 51 N. E. 312; Railroad Co. v. Brownell, 24 N. Y. 345. See Health Department of City of New York v. Rector, etc., of Trinity Church, 145 N. Y. 32, 39 N. E. 833, 45 Am. St. Rep. 579; In re City of Buffalo, 167 N. Y. 256, 60 N. E. 589; People v. Coler, 166 N. Y. 1, 59 N. E. 716. In case a municipal corporation is unable to purchase the lands, rights, or easements necessary or required for the purpose of carrying out an order of the railroad commissioners, such lands, rights, and easements must, by express provision of the statute, be acquired under the condemnation law, and private property is not taken for public use in violation of the constitution. Neither is the grade crossing act in conflict with the constitution, which prohibits giving money of the state or town in aid of a corporation. The abolition of this grade crossing is not alone for the benefit of the Boston & Albany Railroad Company and the Kinderhook & Hudson River Railroad Company, but it is to the advantage of the people of the town of Kinderhook, in that thereby public safety is enhanced. Tocci v. City of New York, 72 Hun. 46. 25 N. Y. Supp. 1089. We cannot say

that the amount that the town of Kinderhook will have to pay under said order is in excess of the benefit to be derived in public safety.

The determination of the board of railroad commissioners should be confirmed, with $50 costs and disbursements.