(33 South. 214.)

No. 14,137.

MORGAN'S LOUISIANA & T. R. & S. S. CO. et al. v. RAILROAD COMMISSION OF LOUISIANA.

(Dec. 15, 1902.)

RAILROAD COMMISSION—DUTIES AND POWERS—ERECTION OF DEPOTS—JURISDICTION OF SUPREME COURT.

1. The railroad commission is an administrative board created by the state for carrying into effect the will of the state as expressed by its legislation. Its authority and duty are not limited to matters concerning public safety or health, but extend to matters concerning public comfort and convenience. In the consideration of the latter subject, the number of persons who may be concerned or interested at some particular point enters as an important factor.

2. The position of the railroads that the point selected by the railroad commission for the erection of a depot as being for the best interest of the people along the line of road should also be one at which the business of the road is remunerative is not supported by authority, nor is it sustainable on principle, in view of the theory upon which the state grants franchises and corporate rights. Regard is to be had to the ability of the railroad, in view of its entire business, to establish and maintain the depot, and not by the situation at some special locality.

3. In disposing of matters of dispute between the railroads of the state and the railroad commission, the supreme court acts as a judicial tribunal, not as a mere administrative board supervisory of the acts of the railroad commission.

(Syllabus by the Court.)

Appeal from judicial district court, parish of East Baton Rouge; H. F. Brunot, Judge.

Action by Morgan's Louisiana & Texas Railroad & Steamship Company and the Southern Pacific Company against the railroad commission of Louisiana. Judgment for defendant, and the plaintiffs appeal. Affirmed.

Thomas J. Kernan and Denegre, Blair & Denegre, for appellants. Walter Guion, Atty. Gen. (Lewis Guion, of counsel), for appellee.

Statement of the Case.

NICHOLLS, C. J. The plaintiffs alleged: That the railroad commission is a corporation organized and existing under the constitution and laws of the state of Louisiana, and domiciled in the parish of East Baton Rouge, and the said commission derives any and all authority, power, and character as such commission, in respect to the matters complained of, from and under articles 285 to 289, both inclusive, of the constitution of this state, of the year 1898.

That petitioner the Southern Pacific Company is a railroad corporation. That it is, and has been since the year 1884, engaged in operating lines of railway in the state of Louisiana, being:

(1) The line of railway known as Morgan's Louisiana & Texas Railroad & Steamship Company, which begins at the city of New Orleans, and runs through the parishes of Jefferson, St. Charles, Lafourche, Terrebonne, Assumption, St. Mary, Iberia, and St. Martin, to the town of Lafayette, in Lafayette parish; thence through the parishes of St. Landry and Avoyelles to Cheneyville, in the parish of Rapides, together with branch lines from its main line, commonly known as the Houma, Lafourche & Thibodaux, Salt Mine, St. Martinsville & Cypremont Branches, and which said railroad reaches the city of New Orleans on the left bank of the Mississippi river by means of a ferry transfer connecting its terminus on the right bank of said river with its wharves and delivery depots on the left bank of said river, and that the total length of the railways of said Morgan Company, exclusive of side tracks, amounts to 282 miles, or thereabouts. all located within the limits of the state of Louisiana, and that said railways belong to petitioner, Morgan's Louisiana & Texas Railroad & Steamship Company.

(2) A line of railroad beginning at Lafay-

ette, in the parish of Lafayette, and running to the border line of the state of Texas, together with the branches running from Midland to Eunice and from Midland to Gueydan,—a corporation organized and existing under the laws of the state of Louisiana.

(3) A line of railroad beginning at Salt Mine Junction, in the parish of Iberia, and running to the town of Abbeville, in Vermilion parish, belonging to the Iberia & Vermilion Railroad Company, a corporation organized and existing under the laws of the state of Louisiana.

That on the line of railroad owned by said Morgan Company, and operated by said Southern Pacific Company, is and has long been situated the town of Morgan City, which is located on the east bank of Berwick Bay, an estuary of the Gulf of Mexico; that said line of railroad passes through Morgan City in a direction approximately at right angles to Berwick Bay, and crossing said bay at a point where it is less than 700 yards wide enters and passes through an unincorporated settlement of about 175 families known as "Berwick," which is in constant communication with Morgan City by means of a ferry across said estuary, and constitutes practically a suburb of Morgan City.

That petitioners have long operated and owned at said Morgan City an important station, situated upon or near the shore of Berwick Bay, fully equipped with waiting rooms, platforms, switches, and switch engines, and all other appliances, and all officials and employés necessary for the carrying on of a large freight and passenger business. Said station and its equipment are and have always been sufficient for the prompt and proper handling of all passengers and freight traveling or consigned to or from Morgan City, or from any of its suburbs or surrounding country, including Berwick City, and no complaint has ever been made thereof to said commission or otherwise. That the inhabitants of Berwick have easy communication with Morgan City by means of a steam ferry running between Morgan City and said suburb, parallel to said railroad, at about 100 yards distant therefrom, and across a distance of less than 700 yards; said ferry being easily reached at both ends from both the stations hereinafter referred to and all other

points within Morgan City and its suburbs by the public streets; and the inhabitants of Berwick have thus better facilities for reaching a regular railroad station for freight and passengers, thoroughly equipped and maintained with all necessary employés and appliances, than have or can have the average population along the lines of other roads of petitioners, or of any other railroad similarly situated in the United States, and their facilities are equal to those of any other settlement similarly situated in the United States.

That nevertheless petitioners have caused to be placed at Berwick, and have for a long time maintained at that point, a suitable passenger station, consisting of white and colored waiting rooms, and have had their passenger trains Nos. 5 and 6 stop there daily for passengers, the amount of travel to and from Berwick not justifying the stopping of other trains at that point; and passengers there boarding said trains are charged only the rates that would be charged if tickets were sold by an agent there. Petitioners have also arranged that freight for Berwick, when so desired, shall be unloaded at Morgan City station, and there carefully checked, and then placed in a freight car and sent across the bayou to Berwick platform daily by the Morgan City switch engine; the freight in said car being distributed in separate piles for the various consignees, and being thus fully protected from the weather; and this method has long been in operation, with no loss or injury or inconvenience of any kind to the population of Berwick. That said platform at Berwick is situated on heavy grades, and that it would be both expensive and detrimental to the freight-train service for freight trains to stop and load or unload freight at that point, resulting in delays and increased expense and risk both to freight destined to Berwick, and to all other freight handled by petitioners.

That stations with far less facilities and accommodations, known as "flag stations," are and long have been common throughout the United States, and throughout the state of Louisiana, at points where the business is more remunerative and larger than at Berwick, and have been recognized as proper and reasonable by many courts, and especially by the supreme court of Louisiana. That all station facilities, not only at Berwick, but

throughout petitioners' lines have been properly fixed and established by petitioners, with due regard to all financial and commercial conditions and laws which enter into, affect, or control the operation and management of railroads, both in the state of Louisiana and elsewhere, and which have been recognized as fair, just, and proper by all persons, commissions, courts, and bodies expert in or intrusted with such matters; and such facilities are properly adjusted with due regard to the earnings and expenses of operation, the revenue from rates, the amount of passenger and freight business, the value of the commodities transported, the volume of traffic, the amount of net earnings of the properties concerned, the original and annual cost of facilities, including the salaries of employés, the operating expenses, taxes, and fixed charges and capitalization of same, and all other circumstances fairly and justly affecting the question.

That said railroad commission did on August 2, 1900, issue an order decreeing that the Southern Pacific Company should erect within 60 days from the date of said order "a suitable station at Berwick, with a floor space of not less than 500 square feet," and that the said company should provide a representative or agent at that point; thus decreeing that said company shall provide a second station and agent less than 700 yards from a larger station, properly provided with all necessary equipment and employés.

Now petitioners show that said order of said commission is unfair, unjust, unreasonable, and in conflict with the rules hereinbefore stated, as observed with regard to the furnishing of railroad facilities, in the following particulars:

(1) That said facilities thus sought to be enforced are much greater than customary facilities afforded under similar conditions by other railroads, either in Louisiana or in other states of the Union.

(2) That the facilities thus sought to be enforced are not justified or demanded by the necessities and conditions of the traffic affected thereby. That the existing facilities are fair and reasonable in themselves.

(3) That the order of said commission is further unjust and unreasonable for this: that, without any justifying necessity, it imposes upon petitioners a certain large annual loss of revenue; and the necessity of making said expenditures not only for the construction and maintenance of said station house, but the salary of said agent, will involve to petitioners a large annual loss.

(4) That the said order of said commission is further unreasonable in this: that it discriminates in favor of said Berwick over all other settlements similarly situated in Louisiana, by prescribing facilities greater than can possibly be, or by order of said commission are to be, or are, customarily furnished to other communities similarly situated.

(5) That the said order is also unreasonable because the facilities required to be furnished are such that the rates upon freight and passengers to and from Berwick, either as fixed by order of this commission, or such as might be charged consistently with the movement of such business, would not be compensatory, and petitioners would not receive from said business sufficient to pay the cost of movement, and the share which such business would bear of the fixed charges and of the expenses occasioned by such order, and of the unreasonable return upon the capital invested in the railroads transporting the same. That the carrying out of said order will be, in effect, the taking of property of petitioners to an extent greatly in excess of $2,000, without due process of law, and without adequate compensation being previously made, contrary to and in violation of section 1 of article 14 of the amendment to the constitution of the United States, and of articles 2 and 167 of the constitution of the state of Louisiana for the year 1898. That said increased facilities cannot and will not cause any such compensatory increase in the business of petitioners as will in any degree make up for the loss of revenue caused thereby; and said articles and provisions of the said constitutions are expressly pleaded as causes of nullity and invalidity of the order of said commission.

Further, that their right of resort to the courts for relief hereinafter prayed for is reserved to them not only under the general provisions of the constitution and laws of the state of Louisiana, but expressly in and by the articles of said constitution establishing said railroad commission.

Plaintiffs prayed that the order of the railroad commission which they complained of

should be decreed to be unjust, unreasonable, null, and void, and of no effect, and further prayed for all further and equitable orders in the premises and for general relief.

The defendant first pleaded a general denial. It then admitted that on the 2d of August, 1900, after a full hearing of the whole subject-matter, an order was granted by the railroad commission of Louisiana, defendant herein, directing that plaintiffs erect within 60 days from that date a suitable freight depot at Berwick, with a floor space of not less than 500 square feet, and that in addition a representative or agent of said company be placed at that point in charge of said freight depot station.

That in thus acting, defendant was performing a duty required by the article of the constitution under which it was created, and after full opportunity had been given to all parties in interest to appear before said commission either in support of or against the granting of such order, and that the same was reasonable, just, and equitable, in the interest of shippers, and not in violation of any of the rights of plaintiffs.

They aver that the demand of plaintiffs is neither just nor well founded, and pray that the same be dismissed and rejected, with costs, and for all and general relief.

The district court rendered judgment in favor of the defendant, denying, disallowing, and rejecting plaintiffs' demand and dismissing the suit, and they appealed.

Article 283 of the constitution of 1898 created a railroad commission. Its powers and authority are set forth in the next article (article 284). It therein granted power and authority, among other matters, to govern and regulate railroad freight and passenger tariffs and service, and to require all railroads to build and maintain suitable depots, switches, and appurtenances wherever the same are reasonably necessary at stations.

By article 285 it was provided that, if any railroad be dissatisfied with the decision or fixing of any rate, classification, rules, change, order, act, or regulation, it might file a petition setting forth the cause of objection to the same in a court of competent jurisdiction against the commission as defendant, and either party to said action might appeal to the supreme court of the state, without regard to the amount involved.

The order complained of by the plaintiffs was granted after hearing evidence upon the petition to it of 25 persons, describing themselves as receivers and shippers of freight at Berwick. The demand was based upon the following averments:

"In the first place, we have no freight depot or the necessary protection for the safekeeping of our freight here, especially against weather, as all freight destined for this station is prepaid, and when delivered it is done so by switching crew. It is then either placed on the platform of the Berwick Lumber Company, Limited, or car is placed on switch at the mercy of thieves or any one.

"All freight destined for this station is claimed at risk of consignees, as several of us have lost freight and have had no reclamation against said company, as in all cases they claim delivery here. We further state that our demand is just, on the face of the receipts of the station for freight and passenger business done by said company, justifies the granting of our demands in full.

"We have no means of ascertaining how the passenger trains are,—whether on time or late. Our only means are the bridge tender, and he always says he can't find out.

"If your honorable commission will investigate the books of the company, you will perceive that the receipts of this station are far in excess of stations who have the facilities we demand of said company."

The claims of the parties are set out in the syllabi of their briefs:

### On Behalf of the Plaintiffs—First. As to the Unreasonableness of the Order.

(1) A railroad cannot be compelled to locate stations at points where the cost of maintaining them will exceed the profits resulting "therefrom to the company." Mobile & O. R. Co. v. People (Ill.) 24 N. E. 646, 22 Am. St. Rep. 556. See, also, Darlaston Local Board v. London & N. W. Ry. Co. [1894] 2 Q. B. 703. In the present case the expenses of the required station agency are more than double or triple the net revenues of the business to be served thereby.

The existence of such a state of facts establishes, to say the least, the strongest prima facie case against the reasonableness of the order complained of, which can be met, if at all, only by proof of extraordinary and

exceptional conditions in justification of the action of the commission.

· The evidence, so far from establishing the existence of extraordinary and exceptional conditions at Berwick, imperatively requiring freight accommodations, tends, on the whole, to strengthen the prima facie case made out, from the revenue point of view. Extensive depots and terminal facilities exist within 700 yards of the proposed location of the new depot. Arrangements are in force for bringing their freight daily to consignees at Berwick, so that even the 700 yards need not be traversed. All reasonable complaint as to the character of this particular service has been removed since the original complaint to the commission. This method of serving the people at Berwick has worked so well in practice that the community has for years enjoyed remarkable immunity from lost or damaged freight. Berwick is so small a place that there is practically no freight shipped therefrom. In addition to all this, the evidence establishes that the physical conditions are such that obedience to the order would necessitate a very expensive and inconvenient handling of trains at Berwick.

### As to the Unconstitutionality of the Order of the Commission.

(2) An order of a railroad commission which requires a railroad company to conduct its business, or the part of it affected by the order, at a loss, or without any profit, is in violation of the constitution of the United States. Chicago, M. & St. P. R. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 702, 33 L. Ed. 970; Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819.

Plaintiffs cite Metropolitan Trust Co. v. Houston & T. C. R. Co. of Texas (C. C.) 90 Fed. 683; Southern Pac. Co. v. Board of Railroad Com'rs (C. C.) 78 Fed. 236; Reagan v. Trust Co., 154 U. S. 362–407, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Munn v. Illinois (Granger Cases) 94 U. S. 113, 24 L. Ed. 77; Railroad Co. v. Tompkins, 176 U. S. 167, 20 Sup. Ct. 336, 44 L. Ed. 417; Stone v. Trust Co., 116 U. S. 307, 6 Sup. Ct. 334, 388, 1191, 29 L. Ed. 636; Chicago, M. & St. P. R. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 462, 33 L. Ed. 970; Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819; Road Co. v. Sandford, 164 U. S. 578, 17 Sup. Ct. 198, 41 L. Ed. 560; Railroad Co. v. Tompkins, 176 U. S. 167, 20 Sup. Ct. 336, 44 L. Ed. 417; Railroad Co. v. Keyes (C. C.) 91 Fed. 47; Mobile & O. R. Co. v. People (Ill.) 24 N. E. 643–646, 22 Am. St. Rep. 556.

### On Behalf of the Defendant.

(1) The evidence shows that the want of facilities for the handling of freight at Berwick, the annoyance and expense to which shippers at that place are subjected in getting their freight, the importance of Berwick as a lumber shipping point, and its size, all unite in sustaining the action of the railroad commission in requiring that a freight depot be built, and that an agent be provided by the railroad company, aside from any question of the reasonableness of the order from a revenue-producing standpoint.

(2) The evidence also shows that Morgan's Louisiana & Texas Railroad & Steamship Company earned during the years 1898, 1899, and 1900, ending June 30, 1900, a large surplus, amounting to $732,004.48 for the year 1900 as dividends to stockholders; showing that its business in the state of Louisiana during those years was more than compensatory.

(3) The evidence also shows that the order of the railroad commission will not cause a loss to the railroad company, as the business done by it to and from Berwick, as shown by the statements of the auditor of the railroad company for the year ending July 31, 1900, amounted to $4,652.60, or not less than $4,080.51; that the cost of putting up a depot building would not exceed $500, and the expense attending the maintaining of such depot, in wages of an agent and porter, would not exceed $1,200 a year.

(4) The railroad commission of Louisiana had the express authority, under article 284 of the constitution of 1898, to require the building of a depot at Berwick, if reasonably necessary, aside from its common-law right to grant such an order. People v. Chicago & A. R. Co., 130 Ill. 175, 22 N. E. 857; Northern Pac. R. Co. v. Territory, 3 Wash. T. 303, 13 Pac. 604; State v. Republican Val. R. Co., 17 Neb. 647, 24 N. W. 329, 52 Am. Rep. 424; Railroad Com'rs v. Portland & O. C. R. Co., 63 Me. 269, 18 Am. Rep. 208; McDonald v. Railroad Co., 26 Iowa, 124, 95 Am. Dec. 114; 6 Thomp. Corp. 7828; Com. v. Eastern

R. Co., 103 Mass. 254, 4 Am. Rep. 555; Railway Co. v. Scott, 23 C. C. A. 424, 77 Fed. 726, 37 L. R. A. 94; Marsh v. Railway Co., 64 Ill. 414, 16 Am. Rep. 564; Bestor v. Wathen, 60 Ill. 138; Railroad Co. v. Seely, 45 Mo. 212, 100 Am. Dec. 369; 2 Elliott, R. R. § 720 (also page 1003); 23 Am. & Eng. Enc. Law, p. 115, verbo "Stations"; Burney's Heirs v. Ludeling, 47 La. Ann. 96, 16 South. 507.

(5) The question in this case is not whether the railroad commission had the authority to order a railroad company to establish a station, but to erect a depot building at a station already established. State v. Chicago, St. P., M. & O. Ry. Co. (S. D.) 81 N. W. 503, 47 L. R. A. 569.

(6) Having the right to order the building of a depot at Berwick, the railroad commission had also the right to prescribe the size of the building, since article 284 of the constitution gave it the right to require "suitable" depots to be built and maintained. 2 Elliott, R. R. § 685; Mayor, etc., of Worcester v. Board of Railroad Com'rs, 113 Mass. 161; Crowell v. Londonderry, 63 N. H. 48.

(7) The right to require the building of a depot for freight of passengers is one which the railroad commission has authority to exercise in certain cases, independent and irrespective of any question of whether the railroad company will thereby incur a loss, if such depot is reasonably necessary in order to afford proper facilities to the public. It is not true that in every instance an order of a commission is unreasonable, where the railroad company will, as a result of the enforcement of such order, incur a loss in its business, or be deprived of a revenue therefrom. Railroad Co. v. Gill, 156 U. S. 649, 15 Sup. Ct. 484, 39 L. Ed. 567; Reagan v. Trust Co., 154 U. S. 413, 14 Sup. Ct. 1047, 38 L. Ed. 1014; 2 Elliott, R. R. p. 1000.

(8) Orders of a railroad commission in such cases may be likened to orders requiring railroad companies to submit to an examination of their engineers for color blindness, requiring them to pay the expenses of maintaining a railroad commission, requiring them to announce the approach of trains by the ringing of bells and other signals, and the like, all of which are within the exercise of the police power of the state. Cleveland, C., C.

& St. L. Ry. Co. v. Illinois, 177 U. S. 516, 20 Sup. Ct. 722, 44 L. Ed. 868; Smith v. Alabama, 124 U. S. 465, 8 Sup. Ct. 564, 31 L. Ed. 508; Nashville, C. & St. L. R. Co. v. Alabama, 128 U. S. 96, 9 Sup. Ct. 28, 32 L. Ed. 352; Railroad Co. v. Gibbs, 142 U. S. 386, 12 Sup. Ct. 255, 35 L. Ed. 1051.

(9) It is not necessary that the business done by a railroad company over every portion of its road should be remunerative. If its railroad, as an entirety, does a business which is compensatory, it has no legal right to complain that an order of a railroad commission may deprive it of revenue over a portion of its line. People v. St. Louis, A. & T. H. R. Co., 176 Ill. 530, 52 N. E. 292; State v. Wabash, St. L. & P. Ry. Co., 83 Mo. 395; St. John v. Railway Co., 22 Wall. 149, 22 L. Ed. 743; Railroad Co. v. Dey (C. C.) 35 Fed. 866, 1 L. R. A. 753; Pensacola & A. R. Co. v. State (Fla.) 5 South. 833, 3 L. R. A. 661.

(10) The presumption of law is always in favor of the maintenance of the order of a railroad commission, which will not be set aside unless flagrantly in violation of the rights of the railroad company. Railway Co. v. Gill, 156 U. S. 649, 15 Sup. Ct. 484, 39 L. Ed. 567; Pensacola & A. R. Co. v. State (Fla.) 5 South. 833, 3 L. R. A. 661–671; Storrs v. Railroad Co., 29 Fla. 617, 11 South. 226; People v. Board of Railroad Com'rs, 53 App. Div. 61, 65 N. Y. Supp. 597; In re Auburn & W. R. Co., 37 App. Div. 162, 55 N. Y. Supp. 895; San Diego Water Co. v. City of San Diego (Cal.) 50 Pac. 633, 38 L. R. A. 462, 467, 62 Am. St. Rep. 261; Spring Valley Waterworks v. City of San Francisco (Cal.) 22 Pac. 910, 1046, 6 L. R. A. 760, 16 Am. St. Rep. 116; Pensacola & A. R. Co. v. State (Fla.) 5 South. 833, 3 L. R. A. 671; Dow v. Beidelman, 125 U. S. 680, 8 Sup. Ct. 1028, 31 L. Ed. 841; Reagan v. Trust Co., 154 U. S. 395, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Railroad Co. v. Tompkins, 176 U. S. 172, 20 Sup. Ct. 336, 44 L. Ed. 417; Jacobson v. Railroad Co. (Minn.) 74 N. W. 893, 40 L. R. A. 389, 70 Am. St. Rep. 358; 2 Elliott, R. R. p. 996; Steencrson v. Railway Co., 69 Minn. 353, 72 N. W. 713; Brannon on the Fourteenth Amendment, p. 197; People v. Budd, 117 N. Y. 25, 22 N. E. 670, 682, 5 L. R. A. 559, 15 Am. St. Rep. 460; People v. Warder of City Prison, 144 N. Y. 529, 39 N. E. 686, 27 L.

R. A. 718; Soon Hing v. Crowley, 113 U. S. 703, 5 Sup. Ct. 730, 28 L. Ed. 1145; Railroad Co. v. Dey (C. C.) 38 Fed. 656–664.

### Opinion.

The plaintiffs urge that "an order of a railroad commission which requires a railroad company to render services to a certain locality or class of its patrons without adequate compensation amounts to a deprivation, pro tanto, of property without due process of law, and is unconstitutional, null, and void. An order of a commission may be unreasonable without being unconstitutional, but it cannot be unconstitutional without being unreasonable." They maintain that "its defenses are independent, in that any one of them is sufficient alone to support a judgment for plaintiff. They are at the same time cumulative, and strengthen each other. The term 'unreasonable,' in a case of this kind, has a very broad meaning. It covers not only a charge that an order, rule, regulation, or tariff of the commission is in violation of the state or federal constitution, because requiring the carrier to conduct its business, or some part of it, at a loss or without any profit, but also any objection or ground of complaint which shows that the action of the commission, while not violative of any organic law, is unnecessarily burdensome in its operation, uncalled for, and not justifiable under the particular facts and circumstances of the case, or for any other reason evidences a mistake of judgment on the part of the commission.

"The jurisdiction of the commission under the law creating it is limited to the enactment of 'reasonable' regulations, orders, etc.; and the jurisdiction of the courts to inquire into the reasonableness of any order or regulation of the commission, and to set it aside if shown to be unreasonable, is perfectly clear.

"It is now well settled that even in the absence of any provision in the railroad commission law of a state for review of the action of the commission by the courts, and in the face of a positive prohibition against such review, the courts are always open to afford relief from any unconstitutional order or regulation of the commission. And the violation of constitutional rights which the courts have most frequently restrained is that involved in an order or regulation which in effect requires a railroad to conduct its business without any profit or return upon the capital invested.

"It is now a maxim of constitutional law that the power to regulate the business of a railroad company does not include the power to make it perform services and furnish facilities to the public without adequate compensation therefor; that by 'adequate compensation' is meant not only receiving sufficient remuneration to prevent the company from conducting its business, or the part affected by the regulation, at a loss, but sufficient to yield a fair return on the capital invested, whether that capital be represented by stocks or bonds or both; and finally that what is adequate compensation, and whether or not the right to receive it has been denied by a commission's order, is a judicial question, to be settled by the courts.

"But the railroad commission law of this state (article 283 et seq., Const. 1898) has conferred upon the courts more extended jurisdiction than simply to afford protection against noncompensatory or confiscatory regulations or orders of the commission. They do have power to grant relief from orders of the commission which, by requiring a railroad to conduct some part of its business at a loss or without any profit, violates the prohibitions of both the state and federal constitutions against depriving a person of his property without due process of law, and to pass upon any other objection to the fairness or reasonableness of any order, rule, rate, or act of the commission. Our lawmakers have seen fit to provide that every act of the commission may be the subject of judicial inquiry, in order that every mistake or injustice may be corrected. In other words, the reviewing power of the court is practically coextensive with the original powers of the commission.

"It must be borne in mind, however, that the courts have no power to fix rates or make rules or regulations or orders. They can only pronounce unreasonable or unenforceable any particular rule, order, or regulation which may be the subject of valid objection. It is then left to the commission to take such action as it may see fit as to the adoption of new rules."

It appears from the pleadings and this ar-

gument that the complaint of the plaintiffs is not directed against any law of the state, but upon the exercise by the railroad commission of the power and authority conferred upon it in respect to the special matter herein complained of.

We recognize the legal right of the plaintiffs, if they be dissatisfied with this order, to have recourse to the courts to have the same set aside, and also the duty of the courts to consider the complaint which they have made from a judicial standpoint.

Article 448 of our Civil Code declares the use of corporations to be to contribute, by the union and assistance of several persons, to the promotion of some object of general utility, although they be at same time established for the advantage of those who are members of such corporations.

It will be seen from this that the object and motive of the state in granting corporate rights is to promote the public welfare. The acceptance of those rights by the incorporators is in aid of that object, though their primary motive and purpose is to derive gain and profit to themselves. What is here said of "corporate rights" applies equally to the grant of public franchises and privileges, and their acceptance. It is a matter not debatable that the state, subject to certain limitations, has, in furtherance of its object of advancing the public good, a power of regulation and control over the action and conduct of those to whom she has granted these rights and franchises. From the very nature of things, there must arise from time to time differences between the corporation, seeking to derive from its corporate rights the utmost personal advantage it can, and the state, seeking to obtain through its conduct and action the greatest good possible for the public. These differences may arise at any time between them upon matters of detail or administration more or less important. As it would be manifestly impossible to anticipate what these causes would be, or when they would arise, different states have found it necessary to constitute a body charged, as their representative, with the duty of guarding the public interests upon this particular subject, to which they have expressly given very broad authority and powers. That body in Louisiana is the defendant in this case, the railroad commission.

It is an administrative board created by the state for carrying into effect the will of the state as expressed by its legislation. See Railroad Commission Cases, 116 U. S. 307, 6 Sup. Ct. 334, 388, 1191, 29 L. Ed. 636; Reagan v. Trust Co., 154 U. S. 394, 14 Sup. Ct. 1047, 38 L. Ed. 1014. The conflicting interests between the corporations and the state are safeguarded by the officers of the former, on the one hand, and by the railroad commission, on the other. The power, authority, and duty of the latter are not limited merely to matters affecting the public safety or the public health. They extend also to matters concerning public comfort and public convenience, and in the consideration of matters of comfort and convenience the number of persons who may be concerned or interested in some particular matter at some particular point enter as important factors in determining what is proper to be done. The commission cannot ignore the comfort and convenience of numbers of citizens on a line of travel or conveyance to base their action exclusively upon a consideration of the amount of dollars and cents which may be involved. As a matter of course, the commission could not, even under expressly delegated powers, act arbitrarily, in manner such as to trench upon the rights of corporations secured to them by law; but, within certain limits, though their action and orders are all subject to review, they are not all subject to reversal. In the present instance it cannot be claimed that the Southern Pacific Road, either in the operation of its line as a whole, or that part of it which falls within the limits of Louisiana, has not been and is not remunerative; nor can it be said that the Morgan Railroad Company is not a paying corporation. It is not claimed that the order complained of in this case, carried into execution, would have the effect of changing the situation in this respect. The utmost claimed is that a small sum, not exceeding five or six hundred dollars in amount, which the commission's order would cause to be expended at Berwick City, and the small amount which will be required to keep an agent at that place, will reduce their profits for a trifling amount. The objection seems to be aimed rather at the place where this money is ordered to be expended, and the inconveniences to which they will be subjected, than

to any effect, or any general effect, which the expenditure will have upon the profits of the roads. It is not claimed, nor is there any evidence in the record which would tend to show, that the commission has, by its orders or rulings as to other places along the roads, in respect either to depots or other matters, brought itself within the limitation placed upon it of not trenching upon the plaintiff's legal rights. So far as we know, the order complained of may be the only one as to betterments which the commission has given. We do not think the point is made that, after the business of a railroad corporation · has made it fairly remunerative, the commission is without general authority to direct that a portion of the "surplus" profits (if that expression can be used) should be applied to the promotion of the comfort and convenience of the people along the line of road. When such a point in the business of the road is reached, the rights of the "general public" come clearly into view, and it is not for the railroad, but for the commission, to determine how, in what way, and in what place this money is to be expended so as best to subserve their interest. That is a matter submitted to the judgment of the commission, not that of the railroad or of this court, unless the selection trenches upon the legal rights of the railroad corporation. The mere reference of disputed issues between the parties to this court for adjudication was not intended to constitute it an "administrative" board, revisory in character over the orders and conclusions of the commission. Our action is judicial, not administrative. It was not intended that we should substitute our judgment for that of the commission every time there is a dispute touching the particular place on the line of railroad where it would be best for the public interest that a station or a depot should be placed. To come successfully before this court, the appellant must be able to point out some legal right of its own which has been infringed upon.

The position taken by the plaintiffs that the point selected by the commission for the erection of a depot as being for the best interests of the people along the line of road should also be one at which the business of the road was remunerative is not sustained by authority, nor is it sustainable on principle, in view of the theory which the state gives corporate rights and franchises. In Railroad Co. v. Gill, the supreme court of the United States used this language: "It therefore appears that the allegations made and the evidence offered did not cover the company's railroad as an entirety, even in the state of Arkansas, but were made in reference to that portion of the road originally belonging to the St. Louis, Arkansas & Texas Railway, and extending from the northern boundary of Arkansas to Fayetteville, in said state. In this state of facts, we agree with the views of the supreme court of Arkansas, as disclosed in the opinion contained in the record, and which were to the effect that the correct test was as to the effect of the act on the defendant's entire line, and not upon that part which was formerly a part of the consolidating roads; that the company cannot claim the right to earn a net profit from every mile, section, or other part into which the road might be divided, nor attack as unjust a regulation which fixed a rate at which some such part would be unremunerative; that it would be practically impossible to ascertain in what respect the several parts would share with others in the expenses and receipts in which they participated; and finally that, to the extent that the question of injustice is to be determined by the effects upon the earnings of the company, the earnings of the entire line must be estimated as against all legitimate expenses under the operation of the act within the state of Arkansas."

In the matter of Auburn & W. R. Co., 37 App. Div. 162, 55 N. Y. Supp. 895, it was said: "It thus seems to be settled by authority that where a state, either by statute or through the order of railroad commissioners, requires a railroad to establish a station at a particular place on the line of its road, such statute or order is not to be overthrown by the courts as unreasonable merely because the establishment or maintenance of such station would prove unremunerative, and regard is to be had to the financial ability of the railroad, in view of its entire business, to establish and maintain such station; that a statute or order of railroad commissioners establishing a station or fixing rates of transportation is not to be interfered with, except upon clear and satisfactory evidence, showing that it is unjust and unreasonable."

The district judge has in this case written an exceptionally able opinion, in which he has set out at length his conclusions, both of fact and of law, and has supported the latter by copious extracts from decisions of the supreme court of the United States and the supreme court of different states. In concluding that opinion, he said: "I am of the opinion that the order of the railroad commission is a reasonable one, in view of the size and importance of Berwick, and the inadequate freight facilities which are now afforded at that place. I do not think the Southern Pacific Company has introduced evidence which will justify me in substituting my opinion for the opinion of the railroad commission as to the reasonableness of the order, even if I disagreed with the commissioners, which I do not."

We have examined the record very carefully, and we find no error in his conclusions or his judgment. It may be well for us to say that the order of the commission complained of does not fix the precise spot at which the depot which it has ordered to be built should be placed, and that we are satisfied that such a depot can be easily built.

It is ordered, adjudged, and decreed that the judgment of the district court be, and the same is hereby, affirmed.