Mercure, J. P., Spain, Carpinello and Mugglin, JJ., concur. Ordered that the judgment is affirmed, without costs.

■ CHERYL L. MILLER et al., Appellants, v STATE OF NEW YORK, Respondent. (Claim No. 86818.) [716 NYS2d 762]
—Carpinello, J. Appeal from a judgment of the Court of Claims (Hanifin, J.), entered June 17, 1999, upon a decision of the court in favor of the State.

The precise issue on this appeal is whether the State may be liable for injuries suffered by claimant Cheryl L. Miller (hereinafter claimant) as a result of a collision between her vehicle and a train at an uncontrolled railroad crossing on Fuller Road in the Town of Fenton, Broome County. The Department of Transportation had previously identified the crossing as needing automatic flashers and gates and had entered into a contract with the owner of the railroad—Delaware & Hudson Railroad Company—to complete the project with the benefit of Federal aid. Although the crossing had been so identified by the Department as needing the upgrade in 1985, the State had obtained Federal funding for the project in May 1986 and Delaware & Hudson had finally agreed in July 1987 to implement the changes; no upgrades were in place as of claimant's February 17, 1991 accident. Claimant, and her husband derivatively, brought this action alleging that the accident was caused by the State's negligence in permitting an unsafe condition to exist at the crossing. Following a trial, the Court of Claims determined that no special relationship existed between claimants and the State. Accordingly, it dismissed the claim. Claimants appeal.

"[T]o sustain liability against a municipality, the duty breached must be more than a duty owing to the general public. There must exist a special relationship between the municipality and the [claimant], resulting in the creation of 'a duty to use due care for the benefit of particular persons or classes of persons' " (*Florence v Goldberg*, 44 NY2d 189, 195, quoting *Motyka v City of Amsterdam*, 15 NY2d 134, 139; *see*, *De Long v County of Erie*, 60 NY2d 296, 304). Application of this principle to the present case leads to the unmistakable conclusion that the State did not assume a duty to any particular special class of persons, particularly claimants, when it took steps to direct an upgrade at the subject crossing (*cf.*, *Florence v Goldberg*, *supra*). Rather, the duty assumed constituted nothing more than a general duty to provide protection

to the public at large from a potentially hazardous railroad crossing pursuant to the State's police powers. Of note, claimants neither pleaded nor proved the existence of a special relationship.

Despite claimants' attempt to suggest otherwise, the State was not acting in any proprietary capacity when it endeavored to upgrade the crossing. It did not own the railroad tracks themselves nor the road bed which they crossed; rather, Delaware & Hudson owned the rail line and the road was a Town road. Moreover, the State cannot be cast in liability for its decision to identify the site as requiring an upgrade or in the subsequent steps it took to contract with Delaware & Hudson to plan and implement the upgrade, these being purely governmental decisions in furtherance of the State's police powers, that is, "undertaken for the protection and safety of the public pursuant to the general police powers" (*Balsam v Delma Eng'g Corp.*, 90 NY2d 966, 968; *see generally, E. B. Metal & Rubber Indus. v County of Washington*, 102 AD2d 599; *Ferrier v City of White Plains*, 262 App Div 94). Absent the State's assumption of a special duty to claimants, it cannot be held liable (*see generally, Halliday v Long Is. R. R. Co.*, 121 AD2d 503; *Haskell v State of New York*, 81 AD2d 953; *Evers v Westerberg*, 38 AD2d 751, *affd* 32 NY2d 684).

In an attempt to rely on the general principle that, despite lack of ownership per se, a municipality may be cast in damages when it assumes control of a private road and maintains it (*see, e.g., Svartz v Fallsburg*, 241 AD2d 799; *see also, Vastola v City of New York*, 289 NY 310, 312; *Sewell v City of Cohoes*, 75 NY 45), claimants assert that the State assumed control of the railroad and then failed to ensure a timely completion of the upgrade project. The essence of this argument is that Highway Law § 10 (24-c) and various provisions of the Railroad Law, particularly Railroad Law §§ 91 and 95, granted the State actual control over the crossing such that its failure to move the project along "by action against [Delaware & Hudson] or by contract bidding or its own forces,"[1] despite the money and authority to do so, gives rise to liability on its part.[2]

Notably, these statutory provisions, even assuming that each

1. Notably, the unrefuted testimony at trial was that the State has *never* made alterations to a crossing, either by bidding the project out or via "its own forces.". To be sure, under Railroad Law §§ 91 and 95, the State would be unable to make any alterations to a railroad crossing without first giving notice to, among other entities, the railroad itself and conducting a hearing.

2. Claimants relatedly assert that the decision in *Friedman v State of New York* (67 NY2d 271) is controlling in this case because the State has offered no excuse for the nearly six-year delay in upgrading the crossing. While

apply to the instant facts, were enacted for the benefit of the *general public* to ensure its safety and not for the benefit of a limited class of persons. Specifically, when the Department acts under Railroad Law §§ 91 and 95, it is acting under "the police power of the State" in the interest of *public* safety (*Matter of New York Cent. & Hudson Riv. R. R. Co.*, 136 App Div 760, 762, *mod* 200 NY 121; *see*, *Matter of Mayor & Common Council of City of Yonkers v New York Cent. R. R. Co.*, 248 NY 593; *Matter of Bay St. Crossing of Staten Is. Rapid Tr. Ry. Co.*, 220 App Div 80, *affd* 245 NY 643; *Matter of Boston & Albany R. R. Co.*, 64 App Div 257, *affd* 170 NY 619; *Matter of Public Serv. Commn. v Long Is. R. R. Co.*, 173 Misc 165, 166; *Matter of City of Mount Vernon*, 119 Misc 561, 563). Thus, while the State may have had the authority to avail itself of the statutory procedures outlined under, for example, Railroad Law § 95, which, in turn, *might* have speeded up the project, it did not owe a special duty to *claimants* to do so (*see*, *Ernest v Red Creek Cent. School Dist.*, 93 NY2d 664, 674). Similarly, Highway Law § 10 was "enacted for the benefit of the general public and [was] not designed to protect any particular individuals against an invasion of a property or personal interest" (*Cox v State of New York*, 110 Misc 2d 924, 926), nor did the Legislature intend that Highway Law § 10 "be interpreted so as to impose liability on the State, absent the existence of some special duty" (*Cox v State of New York*, *supra*, at 926).

Mercure, J. P., Spain, Graffeo and Mugglin, JJ., concur. Ordered that the judgment is affirmed, without costs.

the Court of Appeals held in that case that "When * * * analysis of a hazardous condition by the municipality results in the formulation of a remedial plan, an unjustifiable delay in implementing the plan constitutes a breach of the municipality's duty to the public just as surely as if it had totally failed to study the known condition in the first instance" (*id.*, at 286), this duty flowed from the State's "nondelegable duty to maintain its roads in a reasonably safe condition" (*id.*, at 286). There is no equivalent nondelegable proprietary duty at issue in this case. As noted, the State does not own the railroad or its right-of-way nor is Fuller Road a State highway.